UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KIMBERLY E. BROWN,

                            Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                            Defendant.

Case No. 2:15-cv-01256-RJB-KLS

REPORT AND RECOMMENDATION

Noted for June 10, 2016

Plaintiff has brought this matter for judicial review of defendant's denial of her

application for disability insurance benefits. This matter has been referred to the undersigned

Magistrate Judge.[1] The undersigned recommends the Court reverse defendant's decision to deny

benefits and remand this matter for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On February 16, 1999, plaintiff applied for disability insurance benefits, alleging she

became disabled beginning February 13, 1996.[2] Her application was denied on initial

administrative review and on reconsideration.[3] A hearing was held before an administrative law

---

[1] *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4).

[2] Dkt. 17, Administrative Record (AR), 706.

[3] *Id.*

REPORT AND RECOMMENDATION - 1

judge (ALJ), and in a written decision dated May 24, 2002, that ALJ determined that plaintiff could perform other jobs existing in significant numbers in the national economy, and therefore that she was not disabled.[4] Plaintiff appealed the ALJ's decision, and based on the stipulation of the parties, this Court reversed that decision and remanded this matter for further administrative proceedings.[5]

A new hearing was held on remand before the same ALJ on January 7, 2005, at which plaintiff appeared and testified.[6] In a written decision dated April 27, 2005, the ALJ again determined that plaintiff could perform other jobs existing in significant numbers in the national economy, and therefore that she was not disabled.[7] Although shortly thereafter plaintiff requested a copy of the record and filed written exceptions to the ALJ's decision, no action occurred in the case until August 2, 2013, when the Appeals Council assumed jurisdiction and remanded this matter for additional administrative proceedings.[8]

A third hearing was held before a different ALJ on remand, at which plaintiff appeared and testified.[9] In a written decision dated June 17, 2014, the ALJ determined that plaintiff was disabled from February 13, 1996, through January 25, 2004, but that as of January 26, 2004, she was no longer disabled due to medical improvement.[10] It does not appear that the Appeals Council assumed jurisdiction of this case, thus making the ALJ's decision the final decision of

---

[4] AR 50-69, 74-116.

[5] AR 731-32.

[6] AR 940-73.

[7] AR 911-31.

[8] AR 706, 937-39.

[9] AR 1382-1418.

[10] AR 706-23.

REPORT AND RECOMMENDATION - 2

the Commissioner. [11] Plaintiff then appealed that decision to this Court.[12]

As the parties have completed their briefing, this matter is ripe for the Court's review. Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings because the ALJ erred in failing to: (1) offer valid reasons for discounting plaintiff's credibility; and (2) make specific findings regarding the length of time plaintiff could sit and stand at one time in assessing her residual functional capacity (RFC). The undersigned agrees the ALJ erred in as alleged, and therefore recommends that the decision to deny benefits be reversed and that this matter be remanded for further administrative proceedings.

DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination.[13] "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision."[14] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15] The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record."[16]

Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a

---

[11] 20 C.F.R. § 404.984.

[12] Dkt. 3.

[13] *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991).

[14] *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)).

[15] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

[16] *Batson*, 359 F.3d at 1193.

REPORT AND RECOMMENDATION - 3

preponderance of the evidence is required."[17] "If the evidence admits of more than one rational interpretation," that decision must be upheld.[18] "Where there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made."[19]

I.      The ALJ's Credibility Determination

Questions of credibility are solely within the control of the ALJ.[20] The Court should not "second-guess" this credibility determination.[21] In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence.[22] That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.[23] To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief."[24]

The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."[25] Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."[26] In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and

---

[17] *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[18] *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

[19] *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[20] *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

[21] *Allen*, 749 F.2d at 580.

[22] *Id.* at 579.

[23] *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

[24] *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).

[25] *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

[26] *Lester*, 81 F.2d at 834.

REPORT AND RECOMMENDATION - 4

1 other testimony that "appears less than candid."[27]

2      The ALJ found the record did not support plaintiff's allegations of debilitating symptoms

3 or limitations for three reasons: lack of treatment; improvement in her medical condition; and the

4 nature and extent of her daily activities.[28] Plaintiff argues, and the undersigned agrees, that these

5 reasons are not supported by the substantial evidence. First, while failure to receive the level of

6 treatment one would expect for an individual claiming disability can be a valid reason for finding

7 a claimant to be not fully credible,[29] an ALJ may not reject a claimant's testimony on that basis

8 without considering possible legitimate explanations for that failure,[30] such as lack of insurance

9 or inability to afford it.[31]

10      The ALJ pointed to the fact that plaintiff stopped actively seeking treatment in November

11 2003, and did not return for treatment until May 2005.[32] However, the ALJ fails to acknowledge

12 plaintiff's testimony at the January 2005 hearing that she had difficulty with her insurance, that

13 while her mother helped pay for her medical visits she too could no longer afford to do that, and

14 that her doctor stopped seeing her due to lack of payment.[33] Plaintiff testified that the same thing

15 happened with a subsequent treatment provider.[34] She also testified that she was "dropped" by

16 her insurance, and did not go to appointments due to out-of-pocket costs.[35] Further, there is no

---

[27] *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

[28] AR 720-21.

[29] *Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) *Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[30] *Carmickle*, 533 F.3d at 1162; Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *7.

[31] *Carmickle*, 533 F.3d at 1162; *Gamble*, 68 F.3d at 321.

[32] AR 720.

[33] AR 945, 947.

[34] AR 947.

[35] AR 949-50; *see also* AR 953.

REPORT AND RECOMMENDATION - 5

indication in the record that plaintiff was able to afford greater levels of treatment for the period

prior to May 2005. Reports of financial difficulties can be found in medical records from 2011 to

2013 as well.[36] The ALJ erred in failing to consider this evidence.

Second, it is true that medical improvement also can be a proper basis for discounting a

claimant's credibility – and that the record indicates periods of improvement from mid-2006

through 2008, and again from mid-2010 and extending into 2011 – although even during those

periods plaintiff continued to report symptomatology. [37] But both during and after those periods,

plaintiff reported ongoing, significant symptoms, many of which are not linked to bereavement

as the ALJ indicated.[38] Once more, the ALJ fails to adequately discuss that evidence, and thus

here too that failure constitutes error.

Third, it is also true that a claimant can be found less than entirely credible if he or she

can spend a substantial part of the day performing household chores or other activities that are

transferable to work setting, or if those activities otherwise contradict the claimant's testimony.[39]

The ALJ found plaintiff's daily activities and social functioning were not limited to the extent

one would expect given her complaints of disabling symptoms and limitations.[40] But although

the record does indicate plaintiff engaged in increased activity at times, especially during those

periods during which she showed improvement, it also reveals she often experienced symptom

---

[36] AR 1033, 1057, 1063, 1085, 1087, 1089.

[37] AR 1076, 1078, 1090, 1092, 1098, 1103-04, 1106, 1108, 1139-43, 1145, 1151-52, 1155-57, 1286, 1292, 1294-95, 1302, 1307, 1314, 1320, 1323-25, 1328-29.

[38] AR 810, 1035, 1045-47, 1057-59, 1063-65, 1085, 1087, 1089-90, 1093-94, 1099, 1102, 1106, 1110, 1124, 1128-29, 1132-34, 1136-38, 1329-33, 1335-37, 1339, 1344.

[39] *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen*, 80 F.3d at 1284.

[40] AR 720-21.

REPORT AND RECOMMENDATION - 6

1    exacerbation because of such increased activity.[41] Again, however, the ALJ did not adequately

2    consider the impact of that increased activity on her ability to function, and therefore this reason

3    is unsupported by substantial evidence as well.

4    II.      The ALJ's Assessment of Plaintiff's RFC

5            Defendant employs a five-step "sequential evaluation process" to determine whether a

6    claimant is disabled.[42] If the claimant is found disabled or not disabled at any step thereof, the

7    disability determination is made at that step, and the sequential evaluation process ends.[43] If a

8    disability determination "cannot be made on the basis of medical factors alone at step three of the

9    evaluation process," the ALJ must identify the claimant's "functional limitations and

10   restrictions" and assess his or her "remaining capacities for work-related activities."[44] A

11   claimant's RFC is used at step four of the sequential disability evaluation process to determine

12   whether he or she can do his or her past relevant work, and at step five to determine whether he

13   or she can do other work.[45] It is what the claimant "can still do despite his or her limitations."[46]

14           A claimant's RFC is the maximum amount of work the claimant can perform based on all

15   of the relevant evidence in the record.[47] However, an inability to work must result from the

16   claimant's "physical or mental impairment(s)."[48] The ALJ must consider only those limitations

---

[41] AR 805, 810, 1041, 1048, 1057, 1106, 1110, 1122, 1124, 1128-29, 1140-42, 1145, 1151-52, 1155, 1292, 1294, 1325, 1329-32, 1335-36.

[42] 20 C.F.R. § 416.920.

[43] *Id.*

[44] Social Security Ruling (SSR) 96-8p, 1996 WL 374184 *2.

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

REPORT AND RECOMMENDATION - 7

and restrictions "attributable to medically determinable impairments."[49] The ALJ also must

discuss why the claimant's "symptom-related functional limitations and restrictions can or

cannot reasonably be accepted as consistent with the medical or other evidence."[50]

The ALJ found that beginning January 26, 2004, plaintiff had the RFC:

> **to perform light work. . . Specifically, she can occasionally lift and carry
> 20 pounds, frequently lift and carry 10 pounds, stand and walk 6 hours in
> an 8-hour workday, and sit 6 hours in an 8-hour workday (standing up
> and sitting down in place without leaving the workstation). She is limited
> to occasional balancing, stooping, kneeling, crouching, crawling with no
> climbing ladders, ropes, and scaffolds. She needs to avoid exposure to
> hazards such as working around machinery or heights. She is able to
> perform simple repetitive tasks with no public contacts.**[51]

But because as discussed above the ALJ erred in discounting plaintiff's credibility, it is far from

clear that the ALJ's RFC assessment accurately describes all of plaintiff's limitations. Thus, that

assessment cannot be said to be supported by substantial evidence or free of error.

Plaintiff argues the ALJ's RFC assessment is further deficient because the ALJ failed to

make specific findings as to the amount of time she can sit or stand at one time. The undersigned

again agrees. As plaintiff points out, the Commissioner herself has recognized the impact that the

need to alternate sitting and standing has on the ability to perform light work:

> In some disability claims, the medical facts lead to an assessment of RFC
> which is compatible with the performance of either sedentary or light work
> except that the person must alternate periods of sitting and standing. The
> individual may be able to sit for a time, but must then get up and stand or walk
> for awhile before returning to sitting. Such an individual is not functionally
> capable of doing either the prolonged sitting contemplated in the definition of
> sedentary work (and for the relatively few light jobs which are performed
> primarily in a seated position) or the prolonged standing or walking
> contemplated for most light work. (Persons who can adjust to any need to vary

---

[49] *Id.*

[50] *Id.* at *7.

[51] AR 718-19 (emphasis in original).

sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational expert] should be consulted to clarify the implications for the occupational base.[52]

The Commissioner further has recognized that where the need to alternate sitting and standing "cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded."[53] Accordingly, because "[t]he extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand . . . [t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing."[54]

Defendant argues the ALJ did not place any limits on plaintiff's ability to sit or stand at any one time beyond the six-hour maximum for each activity, but instead merely found that her only limitation was that she could do neither for more than six hours, and that the standing and sitting needed to be done at her workstation. But the undersigned agrees with plaintiff that if the ALJ really did not intend for there to be a sit/stand option requirement within the amount of time she could sit and stand, there would have been no need for her to mention it. Therefore, because the ALJ did impose such a requirement but did not specify the frequency with which or amount of time she needed to perform each activity, she erred.

---

[52] SSR 83-12, 1983 WL 31253, at *4.

[53] SSR 96-9p, 1996 WL 374185, at *7.

[54] Id.

REPORT AND RECOMMENDATION - 9

III.     This Matter Should be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits."[55] Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[56] It is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate."[57]

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose."[58] Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.[59]

Because given the above errors issues remain regarding plaintiff's residual functional capacity, remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly concluded plaintiff was not disabled, and that it reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings herein.

---

[55] *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

[56] *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).

[57] *Id.*

[58] *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).

[59] *Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

REPORT AND RECOMMENDATION - 10

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto.[60] Failure to file objections will result in a waiver of those objections for purposes of appeal.[61] Accommodating the above time limit, the Clerk shall set this matter for consideration on **June 10, 2016**, as noted in the caption.

DATED this 23rd day of May, 2016.


Karen L. Strombom
United States Magistrate Judge

---

[60] 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (Fed. R. Civ. P.) 72(b); *see also* Fed. R. Civ. P. 6.

[61] *Thomas v. Arn*, 474 U.S. 140 (1985).

REPORT AND RECOMMENDATION - 11